**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| EVA DIAZ AND FRANKIE DIAZ, Administrators Of The ESTATE OF FRANKIE DIAZ, JR., | : : : | |
| | : | Civil Action No. |
| Plaintiff, | : : | |
| v. | : : | JURY TRIAL DEMANDED |
| | : : | |
| THE CITY OF PHILADELPHIA | : : | |
| And | : : | |
| WARDEN PIERRE LACOMB, | : : | |
| And | : : | |
| PRISON COMMISSIONER BLANCHE CARNEY, in her individual capacity, | : : : | |
| And | : : | |
| JOHN DOE CORRECTIONS OFFICERS #1-10 | : : | |
| Defendants. | : : | |

**PLAINTIFF'S COMPLAINT**

NOW COMES Eva Diaz and Frankie Diaz as the Administrators of the Estate of Frankie

Diaz, Jr., complaining of Defendants Detention Center, Philadelphia Department of Prisons, the

City of Philadelphia, Warden Pierre Lacomb, Prison Commissioner Blanche Carney, and John

Doe Corrections Officers #1-10 and for cause would show the Honorable Court as follows:

**INTRODUCTION**

1.     In August of 2020 Plaintiff's Decedent Frankie Diaz was a pre-trial detainee at the

Philadelphia Detention Center where he was awaiting trial on drug charges.

2.      Plaintiff's Decedent had been arrested several months before, and was detained as a result of being on probation, and was ineligible for bail.

3.      This is an action brought by the Plaintiff against the Defendants for their failure to protect the Plaintiff's Decedent from known and obvious risks which resulted in his beating, and eventually his murder.  These claims are brought under the Fourteenth Amendment of the United States Constitution and state law.

4.      Plaintiffs bring this action pursuant to Pennsylvania's wrongful death and survival act statutes.  No action for wrongful death or survival has been filed prior to this action, and Plaintiffs are permitted to file this action pursuant to Pa. R.C.P. 2202(a-c)

5.      Plaintiffs bring this action pursuant to Pennsylvania's wrongful death statute on as the personal representatives/ Administrators of the Estate of their son Frankie Diaz Jr., and behalf of themselves, as Plaintiff's Decedent's wrongful death beneficiaries.

## PARTIES

6.      Plaintiff, Eva Diaz, is the is an adult citizen of the Commonwealth of Pennsylvania and is the co-Administrator of the Estate of Frankie Diaz as well as the Decedent's mother.

7.      Plaintiff Frankie Diaz is an adult citizen of the Commonwealth of Pennsylvania and is co-Administrator of the Estate of Frankie Diaz, as well as the Decedent's father.

8.      Copies of the Letters of Administration appointing the Plaintiffs as the Administrators of the Estate of Frankie Diaz are attached hereto as **Exhibit "A"**.

9.      Frankie Diaz died intestate. He was unmarried and had no children. He was survived by his parents, Plaintiff Frank Diaz and Plaintiff Eva Diaz.

10.      Defendant, City of Philadelphia, a City of the First Class organized and existing under the laws of the Commonwealth of Pennsylvania was responsible for the creation and

operation of the Philadelphia Department of Prisons including, but not limited to, the Detention Center which is located at 8201 State Road, Philadelphia, Pa.

11.    Defendant, Warden Pierre Lacomb, was at all times relevant hereto, the Warden for the Detention Center, responsible for the assignments, staffing, and operations of that facility.

12.    Defendant, Prison Commissioner Blanche Carney, was at all times relevant hereto, the Commissioner for the Philadelphia Department of Prisons of the City of Philadelphia. Defendant Carney was the final policymaker on correctional officer staffing levels within the Philadelphia Department of Prisons including at the Detention Center.

13.    Defendant John Doe Corrections Officer #1 is one of the corrections officers assigned to Plaintiff's Decedent's cell block who was supposed to be guarding the showers on August 18th, 2020 but failed to do so.

14.    Defendant John Doe Corrections Officer #2 is one of corrections officers assigned to Plaintiff's Decedent's block who was supposed to be guarding the showers on August 18th, 2020 but failed to do so.

15.    Defendant John Doe Corrections Officer #3 is one of corrections officers assigned to Plaintiff's Decedent's block who was supposed to be guarding the showers on August 18th, 2020 but failed to do so.

16.    Defendant John Doe Corrections Officer #4 is one of corrections officers who was in charge of assigning, overseeing, supervising, and/or ensuring the above referenced correctional officers were guarding the showers on August 18th, 2020 but failed to do so.

17.    Defendant John Doe Corrections Officer #5-6  are the corrections officers who were had knowledge of the history of interactions and/or threats between the Plaintiff's Decedent and

Adam Tann, but failed to move the Plaintiff's Decedent to another location, or allowed the Plaintiff's Decedent to be in the shower, unguarded with Adam Tann.

18.     Defendant John Doe Corrections Officer #7-10  are the corrections officers who were in the vicinity of the Plaintiff's Decedent, and could have, or should have heard the assault, should have been guarding the area to ensure that an assault did not occur, and failed to do so, or in the alternative failed to intervene until it was too late for the Plaintiff's Decedent.

## JURISDICTION AND VENUE

19.     Jurisdiction exists in this Honorable Court pursuant to 28 U.S.C. § 1331 and 1343 as this action is brought pursuant to 42 U.S.C. § 1983 to redress a deprivation of the Fourteenth Amendment rights of the Plaintiff's Decedent Frankie Diaz. Plaintiff further invokes supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to adjudicate pendent state law claims.

20.     Venue is proper in this Honorable Court as Defendants' constitutional violations and intentional torts and otherwise violative conduct occurred within the Eastern District of Pennsylvania.

## FACTS OF THE CASE

21.     On or about August 18, 2020, Frankie Diaz was a pre-trial detainee at the Detention Center in Philadelphia.

22.     During his detention while awaiting trial, and during the COVID-19 pandemic, Diaz had contracted COVID-19.

23.     Diaz had struggled with drug addiction over the course of his live, including being addicted to heroin.

24.     While incarcerated Diaz had several fights and disagreements on his block which amounted to a group of inmates, including but not limited to Inmate Adam Tann, PP#1032771

making and acting on threats to harm the Plaintiff's Decedent, all facts of which the Defendants, in particular COs 1-10, were aware both from their actual experience and observations, and from being told by the Plaintiff's Decedent and/or other inmates or correctional officers.

25.     Despite these concerns, the City acting through Defendant Lacombe and John Doe Corrections Officers 1-10, continued to place Diaz on the prison block which was substantially understaffed with the group of inmates and/or individuals who they had knowledge presented a threat to Diaz's health and safety.

26.     Approximately 1 week before August 18, Diaz was involved in a significant fight and/or altercation with the above referenced group of individuals, including Adam Tann, again of which the Defendants, in particular Corrections Officers 1-10, were aware as set forth above.

27.     On August 18, 2020 Diaz was on the cell block in the shower area of section 303 dormitory when he was attacked by Adam Tann and upon information and belief, a group of individuals which whom he had prior altercations with.

28.     The shower area was unguarded, or in the alternative the guards in that area did nothing to intervene in the attack.

29.     When Diaz was attacked, he screamed for help but no Correctional Officers were present, or in the alternative, those present refused and/or failed to intervene in deliberative indifference to the Plaintiff's constitutional rights.

30.     Plaintiff's Decedent was violently assaulted and suffered significant injuries including bilateral nasal fractures, contusions, bruising and swelling around his left eye, numerous lacerations to the right forehead and left upper and lower lips, left periorbital purple ecchymosis, a focal right frontal subscapular hemorrhage, focal subcutaneous soft tissue hemorrhage at the left

posterior angle of the neck and left sternocleidomastoid muscle, and a large subarachnoid hemorrhage with diffuses cerebral edema as a result of the trauma.

31.     Plaintiff's Decedent was found some indeterminate amount of time later by correctional officers, upon information and belief one of more of the correctional officers who was supposed to be guarding the shower and who is identified herein as Correctional Officers 1-10.

32.     He was found on the ground, unresponsive and not breathing and was rushed to Aria Jefferson Hospital where attempts at revival were made, care was rendered, and the Plaintiff's Decedent was ultimately pronounced death on August 19, 2020.

33.     It is alleged and averred that this assault had been overheard by other inmates, however no guards were present, or in the alternative, those that were present ignored the altercation and the Plaintiff's cries for help.

34.     Inexplicably the shower – a common area for assaults to occur – and a dangerous area – was free of any guards whatsoever at the time of the attack and it was not until the Plaintiff's Decedent was already dead that guards arrived.

## FAILURES OF THE PHILADELPHIA DEPARTMENT OF PRISONS

35.     For years, the Philadelphia Department of Prisons has displayed a consistent and systemic failure to maintain proper staffing practices, resulting in a significant understaffing leading to an increase in inmate deaths directly related to the lack of supervision.

36.     Prison Commissioner Blanche Carney and Warden Pierre Lacomb have long been aware of the dangers created by their failure to maintain proper staffing.

37.     Not only did the City of Philadelphia tolerate the escalating danger from their lack of staffing, Commissioner Carney went so far as to blame the issue on the general staffing

shortages caused by the COVID-19, despite there being evidence that this practice existed long before the pandemic.

*PDP's Established Practice of Understaffing*

38.     According to the Philadelphia Office of the Controller, from 2019 to April of 2021 the PDP saw staff vacancies triple and conditions within the facilities become increasingly unsafe.[1]

39.     City Controller Rebecca Rhynhart expressed grave concern with staffing, stating:

"The Department of Prisons is at a tipping point. Inadequate staffing levels have led to unsafe conditions for workers and confinement of inmates, many of whom are pre-trial, to their cells – sometimes for 20 or more hours a day… The City is responsible for the Department of Prisons' more than 1,500 correctional officers and approximately 4,600 inmates. We have a duty to provide safe working conditions and humane living conditions. The City must take an all-hands-on-deck approach to reach this hiring goal, with rigorous recruitment and multiple classes."

40.     This assessment was based data provided by PDP which showed that from 2019 – 2021, correctional staffing declined by 440 officers and only 119 new officers were hired within that same period. At the time of the statement, Rhynhart indicated that more than 300 COs were needed to meet adequate staffing.[1]

41.     The City of Philadelphia acknowledged the danger that the staffing shortages create, pointing to the five inmate on inmate homicides in PDP facilities from August 2020 – May 2021. A total that exceeded the prior eight years combined.[1]

42.     The *Philadelphia Inquirer*, frequently reported on the failures of the PDP, including an April 23, 2021 article that stated that there were shifts where as many as 14 of the 15 workers abandoned their shifts.[2]

---

[1] https://controller.phila.gov/controller-rhynhart-calls-for-staffing-increase-at-philadelphia-prisons-department-to-improve-safety-for-correctional-officers-and-inmates/
[2] https://www.inquirer.com/news/philadelphia-jail-murder-christopher-hinkle-armani-faison-20210423.html

43.     On May 19, 2021 it was reported that 64% of staff called out on Mother's Day weekend.[3]

44.     Commissioner Carney acknowledged that PDP was short 333 staff positions.[3]

45.     This number continued to grow, and in June 2021 it was then reported that PDP was short 382 officers needed to operate safely.[4] By August 26, 2021 the gap had grown to 483 officers.

46.     In an August 26, 2021 report, the Pennsylvania Prison Society executive Director Claire Shubik-Richards stated "we have been warning the city for months that the prison is dangerous, unconstitutional in its conditions, and past the boiling point."[4]

47.     Correctional officers, including lieutenants, captains, and veterans of more than 20 years, told the *Inquirer* in October 2021 that the conditions in PDP facilities are the "worst they have ever seen."[5]

48.     It was then reported that the number of staff needed to operate safely had grown to 500.

49.     Highlighting the danger the danger in the Philadelphia Prisons is the fact that the PDP inmate population fell by 2% since 2019, yet over that same period seen staffing levels dropped by 28%.

50.     On November 4, 2021, an analysis of PDP staffing rosters found that 20-30% of shifts on a given day were filled by officers and supervisors working overtime, and more than 40% of shifts listed were not filled at all.[6]

---

[3] https://www.inquirer.com/news/philadelphia-department-prisons-lockdown-bail-fund-20210519.html
[4] https://www.inquirer.com/news/philadelphia-prison-riot-cfcf-assault-20210826.html
[5] https://www.inquirer.com/opinion/commentary/philadelphia-prisons-correctional-officer-shortage-20211006.html#loaded
[6] https://www.inquirer.com/news/philadelphia-jails-staffing-shortage-assault-20211104.html

51. David Robinson, the president of the correctional officers' union, Local 159 of AFSCME District Council 33, stated that "we're in a situation where we don't have staff. That makes the prisons dangerous…they had an obligation to keep these jails safe. And I'm going to be honest: I believe they failed."

52. By the November report, the City Controllers officer claimed a 28% vacancy rate within PDP.

53. Commissioner Carney suggested then and has since continued to suggest that the COVID-19 pandemic is to blame, however at the same time the Pennsylvania Department of Corrections reported only a 5.6% vacancy rate.

<u>Powell v. City of Philadelphia</u>

54. Understaffing has been a long-followed practice of the City of Philadelphia.

55. On November 4, 2004, then-Commissioner Leon King implemented a limited overtime policy for PDP officers, sparking significant under-staffing.

56. This understaffing led to an increase of violence in the jails and a deprivation of inmates rights, as well as federal litigation to resolve the issue.

<u>Remick v. City of Philadelphia</u>

57. In April of 2020, ten incarcerated individuals within various facilities operated by the Philadelphia Department of Prisons filed a civil rights class action lawsuit against the City of Philadelphia and Prison Commissioner Blanche Carney over the conditions of the prisons and treatment of inmates by staff.

58. Understaffing within the Department of Prisons was identified in that litigation as the cause of most of the constitutional violations claimed.

59.     Judge Schiller ordered the City and Carney (hereafter "Defendants") through a partial settlement agreement dated June 3, 2020 to rectify certain failures including providing regular staff to maintain safe and optimal operations for inmates.

## Reports

60.     Throughout the entirety of the case there were frequent status reports regarding Defendant's compliance.

61.     A report dated September 24, 2020 concluded "according to an initial review of the staffing reports produced by Defendants, CFCF appears to have the greatest issue with staffing shortages, with many months reporting a shortage of over 100 staff. Of the five facilities, the housing units at CFCF report the most pervasive incidents of non-compliance with the Order." (9/24/2020 Report at pp. 3, 7-10).

62.     The report noted that due to staffing shortages there would be times when "no CO enters a unit for upwards of two hours at a time, leading to delayed response to fights or medical emergencies." (*Id.* at p. 3; fn 2).

63.     Within that same filing, Defendants acknowledged that "staff non-attendance has been an issue." (*Id.* at pp. 7, 11).

64.     On October 7, 2020, both parties convened for a joint status report where it was noted that the City and Commissioner admitted their failure to comply with the Court Order, citing staff shortages. (10/7/2020 Report at p. 2).

65.     Defendants acknowledged that at CFCF in particular, units would often face severe staff shortages for several days in a row which led to further the continued failure to comply with the order. (3/4/2021 Report at pp. 2, 7-8).

66.     A March 19, 2021 joint status report again pointed out insufficient staffing as the primary reason reported by both inmates and PDP administrators for the City's failures to provide for inmate needs. (3/19/21 Report at p. 1).

67.     Defendants cited "strenuous staff shortages" as the reason for their failure to allow inmates adequate out-of-cell time as required by the order. (*Id.* at pp. 2, 7-8).

68.     This status report also made clear that despite the City of Philadelphia, PDP, and Commissioner Carney all blaming general staff shortages on the COVID-19 pandemic that "these issues are limited to the security staff," and that other areas, such as medical staff, are not calling out or failing to show to their shifts in the way that COs are. (*Id.* at pp. 3-4).

69.     Within the April 8, 2021 report, it was made clear that the City, Commissioner Carney and the Wardens alike were aware that insufficient staffing would reasonably result in dangerous conditions, and that the failures had grown so severe that "there is no realistic prospect for the hiring of addition[al] correctional officers that will remedy these issues in the near-term. The price for this failure is being borne by incarcerated persons." (4/8/2021 Report at pp. 3, 17-18).

70.     Staffing issues continued to become more severe, being labelled a "staffing crisis" by PDP in the August 19, 2021 status report.

71.     Soon after, a September 9, 2021 status report again outlined the staffing crisis.

72.     It was found then through data provided to the Court that the PDP staffing crisis was "caused not only by high rates of staff absenteeism, but also by the City's failure to have sufficient numbers of corrections officers to properly staff PDP facilities," with no "realistic plan for closing the gap in terms of correctional staffing." (9/9/2021 Report at p. 2).

73.     The PDP and the City continued to fall short of addressing their long-standing inadequate staffing, despite the repeated notices and prolonged dangers. (*Id.* at p. 2).

**Inmate Statements**

74.     Between September 2020 and September 2021 inmates at PDP-run facilities provided declarations on their experiences within the prisons as part of the litigation.

75.     Across the board, inmates reported significant lack of staff resulting in the deprivation of their out-of-cell time, medication, mail, and proper supervision.

76.     On September 20, 2020, Jacquar J. Stokes, an inmate at CFCF, said in his declaration that he had experienced the negative impacts of CFCF's understaffing.

77.     Mr. Stokes stated that "insufficient staffing is a big impediment to our wellbeing. We are kept in our cells for days at a time and told this is because there are not enough COs on duty," noting that on the weekends "none" of the regular CO's report to their shifts.

78.     Another inmate at CFCF, Daniel Marshall, stated that on August 19, 21, 22, 24, and 26, 2020, inmates were not let out of their cells at all, with the only explanation on August 21st being that "not enough guards were present at the facility."

79.     Kenneth Clark, an inmate at CFCF, stated that on top of inadequate staffing generally, even the correctional officers that do come to their shifts sometimes would "leave for lunch and do not come back to let us out of our cells."

80.     Also on December 3, CFCF inmate Naeem Beyah stated that even though he is a block worker, he and other block workers are not permitted to leave their cells at times due to a lack of staff on the unit.

81.     At the Philadelphia Industrial Correctional Center, another facility operated by PDP and Commissioner Blanche, inmate Tony Bizzell stated that there were also inadequate staff there

resulting in dangerous and neglectful conditions, including on December 28, 2020 when Bizzell stated that another inmate committed suicide. Bizzell states that "I heard him asking for help several times before he died, but staff did not attend to him."

82.     Detention Center, another PDP facility, also saw inmates neglected with one inmate saying that at one point they were not let out of their cell for 48 straight hours due to lack of staff. (Ex. 11, P. 10; 4)

83.     Karren Sprual, another CFCF inmate, claimed in his declaration that "staff tells us that there are not enough correctional officers to have rovers on each unit." Rovers are staff members that move between units as additional assistance and support.

84.     It was also reported by inmates that at times there would be a complete absence of officers, with one inmate at CFCF claiming that there were often no officers on their block at all during the 3 pm – 11 pm and 11 pm – 7 am shifts.

85.     CFCF inmate John Hart further corroborated the lack of CO's, stating that "it has become commonplace to go large stretches of time without seeing COs on our unit."

*Inmate Emergencies and Violence Ignored*

<u>Dale Curbeam</u>

86.     On January 15, 2021, 60-year-old Dale Curbeam was found face down in his cell at CFCF.

87.     Curbeam was pronounced dead just a few minutes after being discovered. The cause of death was ruled a homicide by blunt impact head trauma. Curbeam's cellmate was arrested in connection with the murder.

88.     According to a report by the *Inquirer*, only one staffer was assigned when Curbeam was murdered.[7]

### Christopher Hinkle

89.     Christopher Hinkle was arrested for a minor drug charge but was unable to pay his bond. He was sent to CFCF, where he was housed with another inmate who was killed named Armani Faison.[8]

90.     On April 12th, Mr. Hinkle was beaten by his cellmate in a brutal, prolonged attack.

91.     Hinkle sustained a broken neck among other blunt injuries.[9]

92.     Hours passed before Hinkle was discovered.

93.     The delay in discovering Hinkle rendered him unsavable. Once found, he was put on life support before he died.[10]

94.     Hinkle's cellmate reportedly admitted to the assault. The cellmate had a long record of random assaults and violent criminal offenses, most of which appeared unprovoked.[11]

95.     Hinkle was a non-violent offender.

### Rashaan Chambers

96.      In April of 2021, Rashaan Chambers was an inmate at CFCF.[12]

97.     On April 6, Chambers attempted to get medical care for his diabetes but was reportedly denied.[13]

98.     According to his mother, Chambers reported that no guards checked on him during the night nor did they complete morning checks.

---

[7] https://www.inquirer.com/news/homicide-philadelphia-jails-violence-covid-pandemic-lockdowns-20210120.html
[8] https://www.inquirer.com/news/philadelphia-jail-murder-christopher-hinkle-armani-faison-20210423.html
[9] https://6abc.com/philly-jail-death-christopher-hinkle-murder-inmate-killed/10669008/
[10] https://philadelphia.cbslocal.com/2021/05/21/christopher-hinkle-philadelphia-prison-death-rameel-wright/
[11] https://www.inquirer.com/news/philadelphia-jail-murder-christopher-hinkle-armani-faison-20210423.html
[12] https://www.inquirer.com/news/philadelphia-department-prisons-lockdown-bail-fund-20210519.html
[13] https://nwlocalpaper.com/injustice-is-blind

99.     Feeling ill, Chambers did not go out of his cell for recreation time on April 7, but this did not alert staff to check on him. Staff reportedly did not seek care or check on Chambers until his family complained.

100.    Chambers was eventually taken to the hospital.

101.    On April 16 at 8:42 a.m., Chambers was pronounced dead from complication of diabetic ketoacidosis.

102.    Despite there being a clear need for assistance, Chambers was ignored until his condition was too severe to survive.

Eli Rosa

103.    In a 2021 letter, Eli Rosa described the lack of correctional officers at CFCF where he was an inmate.

104.    Rosa wrote: "I've done had seizures, fights and fell off my bunk, and no C/O was around to help me get medical attention."[14]

Quincy Day-Harris

105.    On August 25, 2021 at the Detention Center, operated by PDP, 25 year old inmate Quincy Day-Harris died by suicide.[15]

106.    According to his family, Day-Harris suffered from paranoid schizophrenia which was well documented through previous times when the jail had admitted him to the hospital for psychiatric purposes.

107.    Day-Harris's family feels that the jail did not provide adequate oversight despite knowing that Day-Harris had documented mental health needs, resulting in his death.

---

[14] https://www.inquirer.com/news/philadelphia-jail-murder-christopher-hinkle-armani-faison-20210423.html
[15] https://www.inquirer.com/news/philadelphia-prison-riot-cfcf-assault-20210826.html

<u>Unknown Inmate #1</u>

108.    Norman Cooper, an inmate in CFCF's custody, reported that in 2020 an unknown inmate on his cell block committed suicide.[16]

109.    It is alleged that due to insufficient staffing leading to guards not checking on cells, the unknown inmate was left hanging for several hours.

110.    According to Cooper, the cellmate of the unknown inmate was banging on their cell for hours trying to summon help. The calls went unanswered

<u>Unknown Inmate #2</u>

111.    On September 30, 2021, an unknown inmate at CFCF was repeatedly beaten and stabbed by three other inmates.[17]

112.    There were no guards on the cell block.

113.    The unknown inmate, with no help available, staggered back to his cell as other inmates mopped up the blood.

**<u>FIRST CAUSE OF ACTION</u>**
**<u>WRONGFUL DEATH ACTION</u>**

114.    Plaintiffs bring this action pursuant to the Wrongful Death Act of the Commonwealth of Pennsylvania, 42 Pa.C.S.A. § 8301, to recover damages as a result of the wrongful death of Frankie Diaz.

115.    No other action has been brought to recover for Diaz's death under the aforementioned statute.

116.    The wrongful death beneficiaries according to the law are the Plaintiff Administrators, Frank Diaz (father of the Decedent) and Eva Diaz (mother of the Decedent)

---

[16] https://www.inquirer.com/news/philadelphia-jail-conditions-cfcf-prisons-emergency-20211116.html
[17] https://www.inquirer.com/news/philadelphia-jails-staffing-shortage-assault-20211104.html

117.    Plaintiff claims all available damages under the Wrongful Death Act of the Commonwealth of Pennsylvania for financial contributions and the loss of future services, support, society, comfort, affection, guidance, tutelage, and contributions and the Plaintiff's decedent, Frankie Diaz, would have rendered to the wrongful death beneficiaries but for his traumatic, untimely and unnatural death occurring as a result of the unlawful acts and omissions which are subject to the present litigation.

118.    Plaintiff claims damages for all medical bills and/or expenses.

119.    Plaintiff claims all damages for payment of funeral or burial expenses.

**SECOND CAUSE OF ACTION**
**SURVIVAL ACTION**

120.    Plaintiff hereby incorporates all preceding paragraphs as is fully stated herein.

121.    Plaintiff brings this action pursuant to the Pennsylvania Survival Statute, 42 Pa.C.S.A. §8302, for all recoverable damages under the Statute, including but not limited to loss of earnings, loss of earning power, loss of earning capacity, pain and suffering and emotional distress.

**COUNT I: FOURTEENTH AMENDMENT**
**PLAINTIFFS VS INDIVIDUAL DEFENDANTS**

122.    Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

123.    As set herein, this is a civil rights action brough pursuant to 42 U.S.C. § 1983 that challenged the unconstitutional actions of the Defendants that resulted in the assault and murder of Frankie Diaz.

124.    At all relevant times hereto, Defendants were "persons" acting under color of state law.

125.    The Fourteenth Amendment imposes on Defendants the obligation to take reasonable measures to protect pretrial detainees from violence at the hands of other inmates.

126.    As explained above, Defendants failed in their obligation at every turn.

127.    Defendants' conduct exposed Frankie Diaz to a substantial risk of harm.

128.    Defendants knew of and were deliberately indifferent to those known risks.

129.    As a result of Defendants deliberate indifference, Frankie Diaz was viciously assaulted and died as a result of his injuries.

130.    Defendants were in direct violation of the Fourteenth Amendment, as well as their own policies, when they recklessly, willfully and with deliberate indifference kept Diaz on the same block as Adam Tann and other inmates whom they knew presented danger to his health and safety, and failed to provide guards in the shower area all the while knowingly being too understaffed to provide adequate supervision to the individuals incarcerated therein.

131.    While acting under color of state law, Defendants affirmatively created the danger that led to Frankie Diaz's death by:

a.    Failing to maintain appropriate staff in the inmate housing units;

b.    Placing Frankie Diaz in a cell with inmate Adam Tann despite knowledge of prior threats and/or assaults;

c.    Failing to have a corrections officer in the shower area while inmates were showering particularly those with a violent history such as Mr. Tann;

d.    Failing to conduct regular checks of the cells housing inmates;

e.    Failing to respond to the assault of the Plaintiff's Decedent in a timely manner despite being alerted by other inmates of the ongoing assault;

    f.   Failing to adequately protect Frankie Diaz from fatal injuries while in their custody and control;

    g.   Failure to have a sufficient number of guards in the shower area;

    h.   Hearing the assault occurring and not responding in a timely or meaningful fashion

    i.   Allowing Frankie Diaz to be in the shower alone, unguarded with a violent individual with whom he had past interactions and/or was threatened by in the past; and,

    j.   Willfully subjecting Frankie Diaz to an assault and ultimately his death, described herein.

132.    The danger created by the Defendants as set forth above was foreseeable and direct, and through their failures, willful disregard, and deliberate indifference to Mr. Diaz's safety, Defendants acted with a degree of culpability that shocks the conscience.

133.    Defendants acts and omissions caused Mr. Diaz to suffer extreme and severe physical and emotional distress, terror, agony, and ultimately were the direct and proximate cause of his death.

**WHEREFORE**, Plaintiffs demand judgement in his favor, and against Defendants Carney, Pierre Lacomb, and John Doe Correctional Officers #1-10 pursuant to 42 U.S.C. § 1983, in an amount in excess of One Hundred Fifty Thousand ($150,000.00), including interest, delay damages, costs of suit, general and specific damages including both survival and wrongful death damages, punitive damages, attorneys' fees under 42 U.S.C. § 1985 and 1988, and any other damages legally appropriate at the time of a jury trial.

### COUNT II: FOURTEENTH AMENDMENT MUNICIPAL LIABILITY
### PLAINTIFFS VS DEFENDANT THE CITY OF PHILADELPHIA

134.    Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

135.    The customs, practices, and policies of the City of Philadelphia were a moving force behind the violation of Frankie Diaz 's constitutional rights.

136.    Mr. Diaz's was deprived of rights and privileges secured to him by the United States Constitution and by other laws of the United States, and by the City of Philadelphia through its many failures addressed *supra*.

137.    Policymakers and authoritative figures knew of the failures of the Philadelphia Department of Prisons as discussed herein but failed to take the necessary steps to rectify the failures, including but not limited to the significant understaffing of the prisons (including Detention Center) and adequately protect the constitutional rights of the inmates in their custody and control.

WHEREFORE, Plaintiff demands judgement in his favor, and against Defendant the City of Philadelphia, pursuant to 42 U.S.C. § 1983, in an amount in excess of One Hundred Fifty Thousand ($150,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, attorneys' fees under 42 U.S.C. § 1985 and 1988, and any other damages legally appropriate at the time of a jury trial.

## COUNT III: NEGLIGENCE
### PLAINTIFFS VS DEFENDANT THE CITY OF PHILADELPHIA

138.    Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

139.    As a direct and sole result of the careless, reckless and negligence of Defendant City of Philadelphia, Decedent Frankie Diaz suffered a violent assault, numerous injuries, and eventual death.

140.    The brutal death of Mr. Diaz was the direct and proximate result of the negligence of Defendant City of Philadelphia.

141.     The Defendant had a duty or obligation to conform to a standard of conduct, including maintaining adequate staff, and failed to do so, and this failure was the direct and proximate cause of Frankie Diaz 's murder.

142.     The Defendant failed to maintain adequate staff despite being put on notice many times since 2004.

143.     Defendant's immunity is waived pursuant to 42 Pa.C.S. § 8542(b)(9).

**WHEREFORE**, Plaintiff demands judgement in his favor, and against Defendant the City of Philadelphia in an amount in excess of One Hundred Fifty Thousand ($150,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, and any other damages legally appropriate at the time of a jury trial.

**STAMPONE O'BRIEN DILSHEIMER**

BY: ___*/s/ Kevin O'Brien*_____
KEVIN P. O'BRIEN, ESQ.
500 Cottman Ave
Cheltenham, PA 19012
215-663-0400
kobrien@stamponelaw.com

LETTERS OF ADMINISTRATION

**REGISTER'S OFFICE**
PHILADELPHIA COUNTY, PA

Nº    A0918-2021

ESTATE  OF ____Frankie Diaz Jr____

Social Security No. ____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____

WHEREAS, ____Frankie Diaz Jr____

late of ____1914 Birch Street, Philadelphia, PA 19134____

died on the __19th__ ____day of__ August ____ , ____2020__ ;
and

WHEREAS, the grant of letters of administration is required for the administration of said estate.

THEREFORE, I, TRACEY L. GORDON, Register for the Probate of Wills and Grant of Letters Testamentary and of Administration, in and for the County of  Philadelphia in the Commonwealth of Pennsylvania, hereby certify that I have granted Letters of Administration ____

to __Eva Diaz and Frankie Diaz____

who ha ve. duly qualified as ____Administrators____ of the estate of the above named decedent and ha ve. agreed to administer the estate according to law, all of which fully appear of record in the Office of the Register of Wills of Philadelphia County, Pennsylvania.

IN  TESTIMONY  WHEREOF,  I have hereunto set my hand and affixed the seal of my office, at Philadelphia, the __18th__  day of __March__ ____ 2021

_Deputy Register_

10-38 (Rev 10/99)

# Office of the Register of Wills of Philadelphia County, Pennsylvania

File #: A0918-2021

Commonwealth of Pennsylvania

County of Philadelphia

} ss.

I, **TRACEY L. GORDON**, Register for the Probate of Wills and Granting Letters of Administration in and for the County of Philadelphia, in the Commonwealth of Pennsylvania

DO HEREBY CERTIFY AND MAKE KNOWN That on the _____18th_____ day of _**March**_

in the year of our Lord__ 2021 _____ **LETTERS OF ADMINISTRATION**

on the Estate of _ **Frankie Diaz Jr**

Deceased, were granted unto _ **Eva Diaz and Frankie Diaz**

having first been qualified well and truly to administer the same. And I further certify that no revocation of said Letters appears of record.

Date of death_____ **8/19/2020**

Given under my hand and seal of office, this__**18th**__ day of_**March**_____, 20 **21**

_Deputy Register_

NOT VALID WITHOUT ORIGINAL SIGNATURE AND IMPRESSED SEAL.

10-14 (Rev. 3/08)

# Office of the Register of Wills of Philadelphia County, Pennsylvania

File #: A0918-2021

Commonwealth of Pennsylvania

County of Philadelphia

} ss.

I, **TRACEY L. GORDON**, Register for the Probate of Wills and Granting Letters of Administration in and for the County of Philadelphia, in the Commonwealth of Pennsylvania

DO HEREBY CERTIFY AND MAKE KNOWN That on the ___18th___ day of __March__

in the year of our Lord__2021__          **LETTERS OF ADMINISTRATION**

on the Estate of __Frankie Diaz Jr__

Deceased, were granted unto __Eva Diaz and Frankie Diaz__

having first been qualified well and truly to administer the same. And I further certify that no revocation of said Letters appears of record.

Date of death ____8/19/2020____

Given under my hand and seal of office, this__18th__ day of __March_____, 20_21_

_____
**Deputy Register**

NOT VALID WITHOUT ORIGINAL SIGNATURE AND IMPRESSED SEAL

10-14 (Rev. 3/08)

# Office of the Register of Wills of Philadelphia County, Pennsylvania

File #: A0918-2021

Commonwealth of Pennsylvania

County of Philadelphia

} ss.

I, **TRACEY L. GORDON**, Register for the Probate of Wills and Granting Letters of Administration in and for the County of Philadelphia, in the Commonwealth of Pennsylvania

DO HEREBY CERTIFY AND MAKE KNOWN That on the ____18th____ day of __March__

in the year of our Lord___2021___         **LETTERS OF ADMINISTRATION**

on the Estate of __Frankie Diaz Jr__

Deceased, were granted unto __Eva Diaz and Frankie Diaz__

having first been qualified well and truly to administer the same. And I further certify that no revocation of said Letters appears of record.

Date of death ____8/19/2020____

Given under my hand and seal of office, this__18th__, day of __March_____, 20_21_

_Deputy Register_

NOT VALID WITHOUT ORIGINAL SIGNATURE AND IMPRESSED SEAL

10-14 (Rev. 3/08)

# Office of the Register of Wills of Philadelphia County, Pennsylvania

File #: A0918-2021

Commonwealth of Pennsylvania

County of Philadelphia

} ss.

I, **TRACEY L. GORDON**, Register for the Probate of Wills and Granting Letters of Administration in and for the County of Philadelphia, in the Commonwealth of Pennsylvania

DO HEREBY CERTIFY AND MAKE KNOWN That on the ___18th___ day of __March__

in the year of our Lord__ 2021 _____     **LETTERS OF ADMINISTRATION**

on the Estate of __Frankie Diaz Jr__

Deceased, were granted unto __Eva Diaz and Frankie Diaz__

having first been qualified well and truly to administer the same. And I further certify that no revocation of said Letters appears of record.

Date of death ____8/19/2020____

Given under my hand and seal of office, this__18th__ day of __March_____, 20_21__

_Deputy Register_

NOT VALID WITHOUT ORIGINAL SIGNATURE AND IMPRESSED SEAL

10-14 (Rev. 3/08)

# Office of the Register of Wills of Philadelphia County, Pennsylvania

File #: A0918-2021

Commonwealth of Pennsylvania

County of Philadelphia

} ss.

I, **TRACEY L. GORDON**, Register for the Probate of Wills and Granting Letters of Administration in and for the County of Philadelphia, in the Commonwealth of Pennsylvania

DO HEREBY CERTIFY AND MAKE KNOWN That on the ____**18th**____ day of __**March**__

in the year of our Lord__**2021**__        **LETTERS OF ADMINISTRATION**

on the Estate of __**Frankie Diaz Jr**__

Deceased, were granted unto __**Eva Diaz and Frankie Diaz**__

having first been qualified well and truly to administer the same. And I further certify that no revocation of said Letters appears of record.

Date of death ____**8/19/2020**____

Given under my hand and seal of office, this__**18th**__ day of __**March**__ ____, 20 **21**__

_Deputy Register_

NOT VALID WITHOUT ORIGINAL SIGNATURE AND IMPRESSED SEAL

10-14 (Rev. 3-08)