**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EVA DIAZ AND FRANKIE DIAZ,** | : | |
| *Administrators of the Estate of Frankie Diaz, Jr.,* | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **Civil Action** |
| v. | : | **No. 22-3286** |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2022, upon consideration of

the Motion to Dismiss Plaintiffs' Complaint, brought by the City of Philadelphia, Warden Pierre

LaCombe, and Prison Commissioner Blanche Carney, it is **HEREBY ORDERED** that the

Motion is **GRANTED.** Plaintiffs' claims against Defendants City of Philadelphia, Warden Pierre

LaCombe, and Prison Commissioner Blanche Carney are **DISMISSED**, with prejudice.

BY THE COURT:

_____
EDUARDO C. ROBRENO, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **EVA DIAZ AND FRANKIE DIAZ,** | : | |
| *Administrators of the Estate of Frankie Diaz, Jr.,* | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 22-3286** |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM

Defendants City of Philadelphia, Warden Pierre LaCombe, and Prison Commissioner Blanche Carney, by and through the undersigned counsel, hereby file this Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of this Motion, Defendants incorporate the attached Memorandum of Law. Defendants respectfully request that this Court dismiss the claims asserted against them, with prejudice.

September 8, 2022                                    Respectfully submitted,

                                    /s/ Adam R. Zurbriggen
                                    Adam R. Zurbriggen
                                    Deputy City Solicitor
                                    Pa. Attorney ID No. 331169
                                    City of Philadelphia Law Department
                                    1515 Arch Street, 14th Floor
                                    Philadelphia, PA 19102
                                    215-683-5114 (Phone)
                                    215-683-5397 (Fax)
                                    adam.zurbriggen@phila.gov

*Counsel for City of Philadelphia, Warden Pierre LaCombe, and Prison Commissioner Blanche Carney*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EVA DIAZ AND FRANKIE DIAZ,** *Administrators of the Estate of Frankie Diaz, Jr.,* | : : : | |
| **Plaintiffs,** | : : | |
| v. | : : | **Civil Action No. 22-3286** |
| **CITY OF PHILADELPHIA, et al.,** | : : | |
| **Defendants.** | : : | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM</u>

This case arises from a fatal inmate-on-inmate assault. As alleged in the Complaint, the Plaintiffs' decedent, Frankie Diaz, Jr. ("Plaintiffs' Decedent") was incarcerated at the Philadelphia Detention Center ("the Detention Center") when, on or about August 18, 2020, he was fatally attacked by a group of fellow inmates. Plaintiffs allege that the assault occurred in a shower area at the Detention Center that was either "unguarded" or "in the alternative [that] the guards in that area did nothing to intervene in the attack." Compl., ECF No. 1, at ¶ 28.

Defendants now move to dismiss each of the claims against them. First, Plaintiffs' 42 U.S.C. § 1983 failure-to-protect and failure-to-intervene claims fail because the Complaint contains only conclusory statements, lacking factual allegations from which it may be plausibly inferred that any corrections officer or other prison official knew of but ignored a serious threat to Plaintiffs' Decedent's safety. Second, even had the Complaint sufficiently alleged a constitutional violation arising out of the assault, the Complaint still fails to allege sufficient facts to state a claim that Prisons Commissioner Blanche Carney, Detention Center Warden Pierre LaCombe, or the City of Philadelphia ("the City") can be held liable for the constitutional

violation. Third and finally, the state-law negligence claim asserted against the City is barred by the Pennsylvania Political Subdivision Tort Claims Act.

## I.     ALLEGATIONS IN THE COMPLAINT

The fatal assault occurred on August 18, 2020, while Plaintiffs' Decedent was incarcerated at the Detention Center, "where he was awaiting trial on drug charges." Compl. ¶ 1. According to the Complaint, prior to the assault, but while incarcerated at the Detention Center, Plaintiffs' Decedent "had several fights and disagreements on his block" with "a group of inmates, including but not limited to Inmate Adam Tann." *Id.* ¶ 24. Plaintiffs allege that this group of inmates "ma[de] and act[ed] on threats to harm the Plaintiff's Decedent," though the Complaint does not allege the substance of any threats or how such threats were acted upon before the fatal assault at issue. Plaintiffs allege that "approximately 1 week before [the fatal assault] on August 18, [Plaintiffs' Decedent] was involved in a significant fight and/or altercation with [this] group of individuals, including Adam Tann." *Id.* ¶ 26. According to the Complaint, the unnamed John Doe corrections officers were aware of these threats and this prior fight, *see id.* ¶¶ 24, 26, though the Complaint does not specifically allege how these officers were aware, *see id.* ¶ 24 (alleging merely that "COs 1-10 . . . were aware both from their actual experience and observations, and from being told by the Plaintiff's Decedent and/or other inmates or correctional officers").

According to the Complaint, the fatal assault occurred while Plaintiffs' Decedent was "on the cell block in the shower area of section 303 dormitory," where "he was attacked by Adam Tann and . . . a group of individuals w[ith] whom he had prior altercations." Compl. ¶ 27. Plaintiffs allege that the "shower area was unguarded, or in the alternative the guards in that area did nothing to intervene in the attack." *Id.* ¶ 28. Plaintiffs' Decedent allegedly "screamed for help

but no Correctional Officers were present, or in the alternative, those present refused and/or failed to intervene." *Id.* ¶ 29.

As alleged in the Complaint, "Plaintiffs' Decedent was found some indeterminate amount of time later by correctional officers." Compl. ¶ 31. Plaintiffs' Decedent, who allegedly was "unresponsive and not breathing," was rushed to the hospital where he was pronounced dead. *Id.* ¶ 32.

Plaintiffs further allege that the Philadelphia Department of Prisons has, "[f]or years . . . displayed a consistent and systemic failure to maintain proper staffing practices, resulting in a significant understaffing leading to an increase in inmate deaths directly related to the lack of supervision." Compl. ¶ 35.

In this survival and wrongful death action,[1] Plaintiffs assert three claims: a claim against all individual Defendants under 42 U.S.C. § 1983, for failure to protect and failure to intervene, in violation of the Fourteenth Amendment (Count I); a § 1983 municipal liability claim against the City (Count II); and a state-law negligence claim against the City (Count III).

For the reasons that follow, Defendants move to dismiss Plaintiffs' claims in their entirety.

## II.    **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

---

[1] While "wrongful death action" and "survival action" are asserted as "causes of action" in the Complaint, "[t]hese are not independent, substantive causes of action, but rather are separate and distinct mechanisms by which a plaintiff may assert underlying claims." *Mohney v. Pennsylvania*, 809 F. Supp. 2d 384, 389 n.6 (W.D. Pa. 2011). Accordingly, where each of the claims underlying such an action is dismissed, so is the action itself.

Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See id.* Put differently, while a court should accept the truth of a complaint's factual allegations, it should not credit a plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (citations and quotations omitted).

## III.   <u>ARGUMENT</u>

Plaintiffs' Complaint should be dismissed in its entirety for three reasons. First, Plaintiffs' § 1983 claims based on the alleged failure to protect and/or to intervene to stop the fatal inmate-on-inmate assault fail, because the Complaint contains only conclusory allegations, which are inadequate to plead that any individual corrections official knew of and ignored a specific threat to Plaintiffs' Decedent's safety and thus was deliberately indifferent to a significant risk of serious harm. Second, the Complaint fails to set out factual allegations supporting the liability of Commissioner Carney or Warden LaCombe as policymakers, or the municipal liability of the City under *Monell*. Third and finally, the state-law negligence claim asserted against the City is barred by the Pennsylvania Political Subdivision Tort Claims Act. These deficiencies are addressed in turn.

A.   <u>The Complaint Lacks Nonconclusory Allegations Supporting a Plausible Claim for Failure to Protect Plaintiffs' Decedent from the Assault or Failure to Intervene to Stop the Assault.</u>

In the context of injury inflicted on one prisoner by another, prison officials can only be held liable if they are deliberately indifferent to a substantial risk of serious harm to one incarcerated person by another. *See Beers Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

The Complaint lacks nonconclusory allegations from which it can be plausibly inferred that any corrections officer or other City official was knowledgeable and deliberately

indifferent to any specific threats to Plaintiffs' Decedent's safety. This pleading deficiency necessitates dismissal of Plaintiffs' failure-to-protect claim.. *See, e.g.*, *Wilkins v. Berks Cnty. Jail Sys.*, No. 15-5448, 2017 WL 2591943, at *2–5 (E.D. Pa. June 14, 2017). By way of a contrasting example, in *Wilkins*, the court found that the plaintiff sufficiently alleged that the defendant prison officials were on notice of threats to his safety based upon specific factual averments (1) of an administrative recommendation from another facility noting the plaintiff should be housed at a particular custody level reserved for those individuals "who should be removed from the general population and placed in separate housing," and, (2) that the plaintiff had *twice previously* been attacked by other inmates—the first time, after being "told to . . . 'watch out' because a relative of an alleged victim in [the p]laintiff's criminal case intended to harm him" and, the second time, by "a cousin of the victim of the crime for which [the p]laintiff had been on trial." *Id.* The Court in *Wilkins* explained that these factual allegations plausibly alleged deliberate indifference by defendants to a serious risk of harm to the plaintiff. *See id.* at *4–5.

Plaintiff's Complaint contains no similar factual allegations that give rise to a plausible inference that the individual named Defendants—or any other corrections officer or other official—were aware of a specific threat to Plaintiffs' Decedent's safety. Instead, the Complaint merely asserts in conclusory fashion: (1) that Plaintiffs' Decedent and "a group of inmates," including Adam Tann "had several fights and disagreements," that included "making and acting on threats to harm the Plaintiffs['] Decedent"; (2) that this included "a significant fight and/or altercation" about "1 week before" the fatal assault; and (3) that "the Defendants, in particular COs 1-10 were aware both from their actual experience and observations, and from being told by the Plaintiff[s'] Decedent and/or other inmates or correctional officers." Compl. ¶¶ 24, 26. These

conclusory allegations lack particular factual detail, and, as such, they cannot support Plaintiffs' failure-to-protect claim. *See, e.g.*, *Montes v. California*, No. 13-cv-5258, 2016 WL 11755588, at *3–4 (C.D. Cal. Apr. 12, 2016) (dismissing inmate's § 1983 failure-to-protect claim where the complaint lacked "any specific factual allegations to show that [the defendant-corrections officials] were specifically aware of an attack on plaintiff or that they knew of a substantial risk to plaintiff's safety and failed to protect him," but rather contained only "vague and conclusory allegations" that did not explain "what [the defendants] specifically knew, including the nature of the alleged threat, and how each defendant learned of such purported threat"); *Hagwood v. City of Phila.*, No. 21-cv-4966, 2022 WL 1654810, at *7–8 (E.D. Pa. May 25, 2022) (Robreno, J.) (holding that plaintiff's generalized statements that "Defendant's employees at [a juvenile detention center] were aware of prior acts of juveniles detained [at the center]" were conclusory and unsupported by sufficient factual allegations to state a claim).

No more availing are the Complaint's allegations that the "shower area" was left "unguarded." Compl. ¶ 28; *see also id.* ¶ 34 (alleging that "the shower—a common area for assaults to occur—and a dangerous area—was free of any guards whatsoever at the time of the attack"). A generous reading of the allegations might support a claim for negligence, but without any specific allegations of *actual awareness* by the individual Defendants of a specific threat posed to Plaintiffs' Decedent, these allegations do not support the "deliberate indifference to a substantial risk of serious harm" required to constitute a constitutional violation. *See Goodman v. Kimbrough*, 718 F.3d 1325, 1330 (11th Cir. 2013) (affirming summary judgment for defendant-officers on a failure-to-protect claim, reasoning that while the failure of officers to conduct cell checks, and their actions of disengaging alerts from activated emergency call buttons, were "perhaps gross negligence," they did not support a finding that the officers "harbored a

subjective awareness that [the plaintiff-detainee] was in serious danger"); *see also Bistrian v. Levi*, 696 F.3d 352, 371 (3d Cir. 2012) (holding that prison officials' placement of the plaintiff-inmate in a recreation pen with another inmate who had a history of violent inmate-on-inmate assaults, but who had no other connection to the plaintiff-inmate, was not deliberately indifferent), *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n.7 (3d Cir. 2020). Plaintiff's Complaint, like the record in *Goodman* and the complaint in *Bistrian*, fails to support the conclusion that the individual Defendants (or any other corrections officer or official) were aware of, and were deliberately indifferent to, a serious danger to Plaintiffs' Decedent. As a result, Defendants respectfully request dismissal of the failure-to-protect claim.

Nor does the Complaint aver sufficient allegations to support its conclusory statement that, after the attack began, unnamed corrections officers failed to intervene to stop it. *See, e.g.*, Compl. ¶ 29 (alleging that "[w]hen [Plaintiffs' Decedent] was attacked, he screamed for help but no Correctional Officers were present, or in the alternative, those present refused and/or failed to intervene"). To be liable for failure to intervene to stop an inmate-on-inmate attack when it occurs, Plaintiffs must plead facts that demonstrate a Defendant had "a realistic and reasonable opportunity to intervene [to stop the attack] and simply refused to do so." *Bistrian*, 696 F.3d at 371 (quoting *Smith v. Mensinger*, 293 F.3d 641, 650–51 (3d Cir. 2002)).  Plaintiffs' conclusory statement is insufficient. *See, e.g.*, Compl. ¶ 29. While the Complaint alleges that Plaintiffs' Decedent "screamed for help" as he was attacked, *id.*, it fails to allege facts supporting the conclusion that that any officer witnessed the attack, was able to hear Plaintiffs' Decedent's scream, or otherwise knew that the attack was taking place. Needless to say the Complaint similarly fails to aver facts supporting the conclusion that any Defendant had a reasonable opportunity to intervene to stop the assault, but chose not to do so. Absent any such factual

allegations, the Complaint fails to state a failure-to-intervene claim as well as a failure-to-protect claim necessitating dismissal of Counts I and II.

  B. <u>Plaintiffs' Complaint Fails to State a Claim Against Prison Commissioner Carney, Warden LaCombe, or the City, Based on a Practice or Custom of Understaffing.</u>

Even were the Court to find that the failure-to-protect and/or intervene claims are adequately pled, Plaintiffs have nevertheless failed to plead that there was a policy or custom that caused the alleged constitutional injury.

In addition to averments of liability against John Does, Plaintiffs complain that Prison Commissioner Carney, Detention Center Warden LaCombe, and the City are liable. The Complaint does not allege that Commissioner Carney and Warden LaCombe were personally involved in, or aware of, the specific risk that Plaintiffs' Decedent would be attacked. Instead, Plaintiffs pursue the theory that a policy, practice, or custom was the moving force behind the injury suffered because Commissioner Carney and Warden LaCombe were "aware of the dangers created by their failure to maintain proper staffing." Compl. ¶ 36. These claims fail for two reasons: (1) for the reasons set out in Part III.A, above, Plaintiffs fail to allege a plausible claim for a constitutional violation based on the August 18, 2020, assault; and (2) even if Plaintiffs had alleged a plausible constitutional violation, they have not plausibly alleged that such violation was the result of a specific policy or custom on the part of the City, Commissioner Carney, or Warden LaCombe.

A municipality, such as the City, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) ("*Monell*"). Rather, "it is when execution of a government's policy . . . inflicts the injury that the government as an entity is responsible under § 1983." *Id.*; *see also Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) ("Section 1983 does not permit

a municipality to be held vicariously liable for the acts of its employees"). To survive the pleading stage in a § 1983 claim against the City, a plaintiff must allege that (1) a constitutionally-protected right has been violated and (2) the alleged violation resulted from a municipal policy or custom that exhibits deliberate indifference to rights of citizens. *Monell*, 436 U.S. at 694–95.

Similarly, a municipal official sued in her individual capacity, such as Prison Commissioner Carney and Warden LaCombe here, cannot be held vicariously liable for the constitutional violations of the employees that the official supervises. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Accordingly, to the extent that Count I of Plaintiffs' Complaint seeks to hold Defendants Carney and LaCombe vicariously liable for the constitutional violations of other officials, the claim fails on its face. To the extent that Plaintiffs seek to hold them liable as policymakers for the City, the claim fails for the same reasons as the municipal liability claim (Count II) against the City under *Monell*.  These two reasons are discussed below in turn.

First, for the reasons set out in Part III.A, above, Plaintiff fails to allege a plausible claim for a constitutional violation based on the August 18, 2020, assault. As discussed in further detail above, the Complaint baldly alleges deliberate indifference to a serious risk of harm to Plaintiffs' Decedent on that date without any facts to support such conclusory statements. Because the Complaint fails to allege a plausible violation of the constitutional rights of Plaintiffs' Decedent in the first place, the derivative claims against the City, Commissioner Carney, and Warden

LaCombe fail as well. *See, e.g.*, *Mulholland*, 706 F.3d at 238 n.15 ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.").

Second, even if, *arguendo,* the Complaint sufficiently plead a constitutional injury, the Complaint fails to allege facts to support a plausible inference that the violation was the result of a specific policy or custom on the part of Commissioner Carney, Warden LaCombe, or the City. Plaintiffs allege that "[f]or years, the Philadelphia Department of Prisons has displayed a consistent and systematic failure to maintain proper staffing practices," and that such understaffing caused the attack on August 18, 2020. Compl. ¶ 35*; see also id.* ¶¶ 36–113, 134– 37. But, at most, these allegations of understaffing support a claim of *negligence*[2] in failing to maintain appropriate staffing levels, not a specific policy or custom that would demonstrate *deliberate indifference* to a serious risk of harm of the type that would support a *Monell* claim under § 1983. *See, e.g.*, *Hunter v. Shouppe*, No. CIV.A. 07-74, 2007 WL 712207, at *3 (W.D. Pa. Jan. 25, 2007), *R&R adopted* 2007 WL 735487 (W.D. Pa. Mar. 7, 2007) (holding that plaintiff failed to state a claim where he did not "make any allegation that the warden was aware, or should have been aware, of any special need to provide Plaintiff with segregated housing," and explaining that plaintiff's complaint "[a]t most . . . may demonstrate an unintentional failure to anticipate violence," which "sounds, if anything, in negligence, which is not actionable under 42 U.S.C. § 1983.").

In adjudicating *Monell* claims, "courts have recognized a two-path track to municipal liability under § 1983, depending on whether the allegation is based on municipal policy or custom." *Mulholland*, 706 F.3d at 237 (citations and quotations omitted). A policy occurs when

---

[2] As will be discussed in the subsequent section, the City is immune from Plaintiffs' asserted negligence claim (Count III) under Pennsylvania law.

a decisionmaker with final authority "issues an official proclamation, policy, or edict," while a custom occurs when practices are "so permanent and well-settled as to virtually constitute law." *See id.* (citations and quotations omitted). A complaint must include "specific factual allegations referencing the conduct, time, place, and persons responsible for any official municipal policy or custom." *See Torres v. City of Allentown*, No. 07-1934, 2008 WL 2600314, at *5 (E.D. Pa. June 30, 2008) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)). And to bring a § 1983 municipal liability claim under *Monell*, Plaintiff must present evidence that a "policy or custom of [the City of Philadelphia] was the 'moving force' behind a violation of his [constitutional] rights." *Clark v. Regional Medical First Correctional*, 360 F. App'x 268, 269 (3d Cir. 2010).

For example, in *Torres v. City of Allentown*, cited above, the court found dismissal appropriate where the plaintiff's complaint alleged that Allentown "did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct, and that this policy/custom exhibited deliberate indifference to her constitutional rights." 2008 WL 2600314, at *5. The court viewed the complaint as insufficient because it "lack[ed] any specific factual allegations referencing the conduct, time, place, and persons responsible for any official municipal policy or custom" and that it "fail[ed] to specifically demonstrate how the training programs for the police officers [were] inadequate." *Id.*

Here, the Complaint repeatedly alleges that *all* of the facilities of the Philadelphia Department of Prisons ("PDP") have been understaffed "[f]or years." *Id.* ¶ 35. In fact, the Complaint focuses largely on a different PDP facility entirely, alleging staffing issues at Curran-Fromhold Correctional Facility ("CFCF"). *see, e.g.*, Compl. ¶¶ 61, 65, 76, 78–80, 83–104, 108–113. But the Complaint fails to allege a specific policy or custom on the part of the

11

City—or on the part of PDP Commissioner Carney or Warden LaCombe (as decisionmakers for the City)—from which a plausible inference can be drawn that the City *deliberately* understaffed the Detention Center or any PDP facility. Plaintiffs do not allege, for example, that the City, when faced with such options, failed to take any specific action that would have increased staffing at PDP facilities, or took actions that would inevitably result in inadequate staffing. On the contrary, and as is suggested in many of the allegations in the Complaint, the City's good-faith efforts to staff PDP facilities have been frustrated by issues such as correctional staff attendance. *See, e.g.*, *id.* ¶¶ 43, 63, 68. Again, Plaintiffs' allegations fail to adequately plead a policy or custom of *deliberate indifference* that would support a claim under 42 U.S.C. § 1983. *See Goodman*, 718 F.3d at 1330.

    C.    <u>Plaintiffs' Negligence Claim Against the City of Philadelphia Is Barred by the Political Subdivision Tort Claims Act.</u>

Count III of the Complaint asserts a negligence claim against the City of Philadelphia based on the alleged failure to "conform to a standard of conduct, including maintaining adequate staff." *See* Compl. ¶¶ 138–143. This claim should be dismissed, because state law immunizes the City from liability for it.

The tort liability of the City of Philadelphia is governed and limited by the Political Subdivision Tort Claims Act ("TCA"), 42 Pa. Cons. Stat. Ann. §§ 8541–8564. The TCA provides municipalities with general immunity from tort liability under state law, with only a limited waiver of that statutory immunity for nine categories of negligence. 42 Pa. Cons. Stat. Ann. §§ 8541, 8542. That waiver of immunity applies only to negligence claims arising out of vehicle liability; care custody or control of personal property; real property; trees, traffic controls, and street lighting; utility service facilities; streets; sidewalks; care custody and control of animals; and sexual abuse of minors. *Id.* § 8542(b)(1)–(9). Pennsylvania courts instruct that

these nine exceptions to immunity must be narrowly interpreted, given the expressed legislative

intent to insulate local governments or political subdivisions from tort liability. *Lockwood v. City*

*of Pittsburgh*, 751 A.2d 1136 (Pa. 2000); *Snyder v. Harmon*, 562 A.2d 307 (Pa. 1989); *Mascaro*

*v. Youth Study Center*, 523 A.2d 1118 (Pa. 1987). The TCA thus immunizes the City from

liability for a claim raising any other theory of tort liability, be it negligence or an intentional

tort. *See Smith v. School Dist.,* 112 F. Supp. 2d 417, 424 (E.D. Pa. 2000) (claims for intentional

torts against municipal entities are barred by Pennsylvania law). In addition to its immunization

of the City from tort liability, the TCA also "precludes the imposition of liability upon a

governmental unit based upon a theory of vicarious liability." *Crowell v. City of Phila.*, 613 A.2d

1178, 1183 (Pa. 1992) (citing 42 Pa. Cons. Stat. Ann. § 8541 *et seq.*). Moreover, the City cannot

be liable for the willful misconduct of its employees under the TCA. *City of Philadelphia v.*

*Glim,* 613 A.2d 613, 617 (Pa. Commw. Ct. 1992).

Plaintiffs' negligence claim (Count III) fails because it does not fall into one of the

TCA's enumerated exceptions to immunity. *See* 42 Pa. Cons. Stat. Ann. § 8542(b)(1)–(9).

Plaintiff's Complaint incorrectly attempts to invoke the "sexual abuse" of minors exception. *Id.*

§ 8542(b)(9); *see* Compl. ¶ 143 ("Defendant's immunity is waived pursuant to 42 Pa.C.S. §

8542(b)(9)."). But the Complaint does not allege that the attack on Plaintiffs' Decedent was a

sexual-abuse offense, and fails to allege that he was a minor at the time of the fatal attack,

making the exception inapplicable here

Further examination of the "sexual abuse" exception of the TCA, § 8549(b)(9),

demonstrates its inapplicability to the present action. Under this section, the City is not immune

to claims involving "[c]onduct which constitutes an offense enumerated under [42 Pa. Cons.

Ann.] section 5551(7) (relating to no limitation applicable) if the injuries to the plaintiff were

caused by actions or omissions of the local agency which constitute negligence." The phrase "offense enumerated under section 5551(7) (relating to no limitation applicable)" limits the applicability of this exception to conduct constituting one of nine enumerated sexual abuse offenses where "the victim was under 18 years of age at the time of the offense." 42 Pa. Cons. Stat. Ann. § 5551(7). Thus, the exception does *not* apply unless both the conduct at issue constituted one of the sexual abuse offenses enumerated in § 5551(7) *and* "the victim was under 18 years of age at the time of the offense." *See Jean v. City of Phila.*, No. 22-cv-433, 2022 WL 1616171, at *3 (E.D. Pa. May 23, 2022) (Robreno, J.) (holding that "under the plain language of the statute, the sexual assault exception to governmental immunity, as stated in section 8542(b)(9) of the []TCA, only applies when the victim was under eighteen years of age at the time of the alleged sexual assault").

Here, while the Complaint alleges that Plaintiffs' Decedent was fatally assaulted, there are no allegations that the attack was of a sexual nature as enumerated in § 5551(7), such as "rape" or "sexual assault." And even if it did include such allegations, there are no allegations that Plaintiffs' Decedent was under 18 years of age at the time of the attack. While the Complaint is silent as to Plaintiffs' Decedent's age, publicly available records indicate that he was 30 years old. *See* Samantha Melamed, *A Month After Her Son Died in Philadelphia Jail, A Mother Is Still Fighting to Learn Why*, Phila. Inquirer, Sept. 17, 2020, *available at* https://www.inquirer.com/news/philadelphia-jail-assault-frankie-diaz-jr-protest-death-detention-center-20200917.html (last accessed Sept. 6, 2022) (indicating that Plaintiffs' Decedent "was 30" at the time of the fatal attack); *see also Jean*, 2022 WL 1616171, at *3 n.2 (taking notice, at the motion to dismiss stage, of the decedent's age, as reported in a Philadelphia Inquirer article, to

conclude that the decedent was not a minor at the time of the inmate-on-inmate attack at issue, and thus that the sexual abuse exception to immunity under the TCA did not apply).

Because there is no waiver of statutory immunity for the negligence claim asserted against the City, Count III must be dismissed as a matter of law.

**IV.**     **<u>CONCLUSION</u>**

For the reasons set forth above, the Court should dismiss Plaintiffs' claims against Defendants City of Philadelphia, Warden Pierre LaCombe, and Prison Commissioner Blanche Carney, with prejudice, for failure to state a claim.

September 8, 2022                                    Respectfully submitted,

<u>/s/ Adam R. Zurbriggen            </u>
Adam R. Zurbriggen
Deputy City Solicitor
Pa. Attorney ID No. 331169
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5114 (Phone)
215-683-5397 (Fax)
adam.zurbriggen@phila.gov

*Counsel for City of Philadelphia, Warden
Pierre LaCombe, and Prison Commissioner
Blanche Carney*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EVA DIAZ AND FRANKIE DIAZ,** | : | |
| *Administrators of the Estate of Frankie Diaz, Jr.,* | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 22-3286** |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date below, the foregoing Motion to Dismiss Plaintiffs'

Complaint, brought by Defendants City of Philadelphia, Prison Commissioner Blanche Carney,

and Warden Pierre LaCombe was filed via the Court's electronic filing system and is available

for viewing and downloading.

<div style="margin-left:50%">

/s/ *Adam R. Zurbriggen*
Adam R. Zurbriggen
Deputy City Solicitor
Pa. Attorney ID No. 331169
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5114 (Phone)
215-683-5397 (Fax)
adam.zurbriggen@phila.gov

</div>

Date: September 8, 2022