IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EVA DIAZ and FRANKIE DIAZ | : | CIVIL ACTION |
| as Administrators of the | : | NO. 22-3286 |
| Estate of FRANKIE DIAZ, JR., | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| THE CITY OF PHILADELPHIA, | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              OCTOBER 31, 2022

## I.    INTRODUCTION

Plaintiffs Eva and Frankie Diaz, as Administrators of the
Estate of Frankie Diaz Jr. and under Pennsylvania's Wrongful
Death and Survivorship statutes, 42 Pa. Cons. Stat. §§ 8301,
8302 (2022), bring a state-law negligence claim and multiple
federal § 1983 claims against Defendants Philadelphia Department
of Prisons, the City of Philadelphia, Philadelphia Detention
Center, Warden Pierre Lacombe, Prison Commissioner Blanche
Carney, and ten unnamed Corrections Officers. There is also a
pending state criminal action against the inmate who allegedly

killed Decedent, Adam Tann; this matter is currently listed for trial on November 28, 2022. Pls.' Resp. in Opp'n 4, ECF No. 13.[1]

Before the Court is Defendants' Motion to Dismiss (ECF No. 7) and Plaintiffs' Response in Opposition (ECF No. 13). Defendants argue that Plaintiffs' § 1983 claims are too conclusory to state a claim upon which relief can be granted; the facts do not indicate that certain high-level prison officials nor the City can be liable; and, that the state-law negligence claim is barred by statute.

## II.  BACKGROUND[2]

Plaintiffs allege that their son, Frankie Jr. ("Decedent"), was beaten to death while detained prior to trial in the Philadelphia Detention Center. Compl. ¶¶ 1-3, ECF No. 1. Plaintiffs claim that Defendants knew of obvious risks to the Decedent and failed to protect him from harm, given Decedent's "several fights and disagreements" with, and threats from,

---

[1] The related state criminal case is <u>Commonwealth v. Tann</u>, CP-51-CR-0000584-2021 (Pa. Ct. Com. Pl.). Mr. Tann was charged with third degree murder, obstruction of law enforcement, unsworn falsification to authorities, and tampering with/fabricating physical evidence in violation of state law. Mr. Tann is only being tried on the third-degree murder charge, as the other charges were dismissed for a lack of evidence. Plaintiffs indicate that further publicly available information may be available to them to support this action following the resolution of <u>Commonwealth v. Tann</u>. Pls.' Mot. in Opp'n 4.
[2] The facts recited are drawn from the Plaintiffs' complaint and taken as true. <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555-56 (2007).

certain other inmates on his cell block. Id. ¶¶ 3, 24.
Plaintiffs allege that the City, acting by and through
Defendants Lacombe and Corrections Officers, continued to place
Decedent in a cell block where he risked severe harm from other
inmates, and that Defendants knew that this particular cell
block was "substantially understaffed." Id. ¶ 25.

On August 18, 2020, Decedent was attacked by at least one
other inmate while in the shower area and suffered significant
injuries to his face and head. Id. ¶¶ 27, 30. Plaintiffs allege
that the shower area was unguarded, or, in the alternative,
prison guards knew of the altercation but failed to intervene
despite Decedent's cries for help. Id. ¶¶ 28-29. Decedent was
later found by Corrections Officers and transported to the
hospital, but he was ultimately pronounced dead on August 19,
2020. Id. ¶¶ 31-32.

Plaintiffs allege that the Philadelphia Department of
Prisons "has displayed a consistent and systemic failure to
maintain proper staffing practices . . . leading to an increase
in inmate deaths directly related to the lack of supervision."
Compl. ¶ 35. Plaintiffs allege that Defendants were on notice of
systemic staffing issues, as Commissioner Carney has described
further shortages caused by COVID-19 and City Controller
Rhynhart has acknowledged the unsafe conditions for workers and
inmates. Id. ¶¶ 37, 39.

Plaintiffs identify two lawsuits filed against the City on the basis of understaffing and dangerous living conditions in municipal detention centers. Id. ¶¶ 54-59. Plaintiffs further recount the statements and histories of inmates detained in Philadelphia Detention Centers between September 2020 and September 2021, detailing injuries and deaths that were allegedly not attended to promptly. Id. ¶¶ 74-113.

Plaintiffs bring state and federal claims arising from the death of their son. Under state law, Plaintiffs bring a negligence claim against the City of Philadelphia. Under federal law, Plaintiffs bring § 1983 claims against the Individual Defendants and the City of Philadelphia.

### III. LEGAL STANDARD

The party moving for dismissal under Rule 12(b)(6) bears the burden of showing that the opposing party has not stated a claim. See Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991). To meet this burden, the moving party must show that the complaint does not contain "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

A plaintiff need not make out a prima facie case in the complaint in order to survive a motion to dismiss, however. Connelly v. Lane Construction Corp, 809 F.3d 780, 788-89 (3d

4

Cir. 2016) (distinguishing between pleading requirements and evidentiary standards); Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) ("[A]n evidentiary standard is not a proper measure of whether a complaint fails to state a claim."). But, while a plaintiff need not have the correct legal theory or make out a prima facie case in the complaint, a plaintiff must allege facts to show that discovery will reveal sufficient support of each element of the claim. See Comcast Corp v. NAACP, 140 S. Ct. 1009, 1014-15 (2020) ("[W]hile the materials the plaintiff can rely on to show causation may change as a lawsuit progresses from filing to judgment, the burden itself remains constant.").

At this stage, a court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in a plaintiff's favor. Bell Atl. Corp., 550 U.S. at 555-56. But, the court must disregard any conclusory allegations in the complaint and instead look to well-pleaded factual allegations. Iqbal, 556 U.S. at 678-79.

## IV. DISCUSSION

### A. State-Law Negligence Claim

Plaintiffs do not contest the motion to dismiss as to the negligence claim. Pls.' Mot. in Opp'n at 15. The Court agrees with Defendants' assessment that the negligence claim is barred by governmental immunity, as Plaintiffs' claim does not fit into

one of the nine limited exceptions under 42 Pa. Cons. Stat. § 8542(b). Accordingly, this claim is dismissed.

**B.  <u>Federal Claims</u>**

Plaintiffs bring their federal claims under § 1983 for violations of Decedent's rights under the Fourteenth Amendment as a pretrial detainee subjected to allegedly unconstitutional conditions. See <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 (1979) (attributing the constitutional protections for state pretrial detainees against unlawful punishment to the Due Process Clause of the Fourteenth Amendment); <u>Hubbard v. Taylor</u>, 399 F.3d 150, 163-68 (3d Cir. 2005) (discussing the applicability of the Fourteenth Amendment to pretrial detainees under <u>Bell v. Wolfish</u>). Defendants do not contest that Defendants are "person[s] [acting] under color of any statute, ordinance, regulation, custom, or usage," of the Commonwealth of Pennsylvania. 42 U.S.C. § 1983. Rather, Defendants argue that Plaintiffs' claims fail on the merits.

1.   <u>Section 1983 - Individual Defendants</u>

A prison official may be liable under § 1983 on a deliberate indifference theory "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994). Deliberate indifference under the Fourteenth Amendment, as at issue here, means a "willingness

6

to ignore a foreseeable danger or risk." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 910 (3d Cir. 1997).

Where the claim arises out of inmate-on-inmate violence, a plaintiff can demonstrate deliberate indifference by showing that an "official knows an inmate faces 'an excessive risk of harm' from another prisoner but does nothing to prevent the assault," or, by showing that "when an attack occurs, [an official] has 'a realistic and reasonable opportunity to intervene' but 'simply refuse[s] to do so.'" Brown v. Smith, No. 21-3127, 2022 WL 2383609, at *2 (3d Cir. July 1, 2022) (quoting Bistrian v. Levi, 696 F.3d 352, 369 (3d Cir. 2012), abrogated on other grounds as recognized in Mack v. Yost, 968 F.3d 311, 319 n.7 (3d Cir. 2020), and then Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002)). Where, as here, a snap judgment by a prison official may be involved, a plaintiff faces a higher burden of pleading and proof. Vargas v. City of Philadelphia, 783 F.3d 962, 973 (3d Cir. 2015) (quoting Sanford v. Stiles, 456 F.3d 298, 308-09 (3d Cir. 2006)).[3]

---

[3] Circumstantial evidence may be used to make this showing. A plaintiff can raise "(1) evidence that the risk was obvious or a matter of common sense, (2) evidence that the actor has particular professional training or expertise, and (3) evidence that the actor was expressly advised of the risk of harm and the procedures designed to prevent that harm and proceeded to violate those procedures." Kedra v. Schroeter, 876 F.3d 424, 441 (3d Cir. 2017).

Plaintiffs allege that, while acting under color of state law, Defendants affirmatively created the risk that led to Decedent's death by failing to appropriately staff units, placing Decedent in a dangerous housing unit despite knowledge of prior altercations with other inmates in that unit; failing to supervise the shower area; failing to regularly check housing units; failing to timely respond to the assault of Decedent; and generally failing to protect Decedent from harm. Compl. ¶ 131.

Plaintiffs have likely met their burden on the first prong of a deliberate indifference claim--that Defendants knew of a substantial risk of harm to Decedent's life. Plaintiffs contend that the Corrections Officers "were aware both from their actual experience and observations, and from being told by the Plaintiff's Decedent and/or other inmates or correctional officers" that Decedent "had several fights and disagreements on his block" with a number of inmates, including Inmate Adam Tann. Compl. ¶ 24. Plaintiffs further allege that the Corrections Officer Defendants exposed Decedent to an excessive risk of harm by "continu[ing] to place [Decedent] on the prison block which was substantially understaffed with the group of inmates and/or individuals who they had knowledge presented a threat to [Decedent's] health and safety." Id. ¶ 25. Plaintiffs allege that the risk to Decedent became obvious approximately a week before Decedent was killed, when Decedent "was involved in a

significant fight and/or altercation" with the same group of inmates that had caused him trouble previously. Id. ¶ 26. Taking these facts as true and making all inferences in Plaintiffs' favor, it is plausible that Defendants were aware of the threats to Decedent's life.

But, Plaintiffs have failed to provide more than conclusory allegations that the Corrections Officer Defendants did nothing to prevent the assault, or, when given the opportunity to intervene, allowed the other inmates to continue beating Decedent. Plaintiffs allege that the shower area was unguarded, that Corrections Officers failed to respond to Decedent's screams, and that Corrections Officers failed to respond promptly to the altercation. Compl. ¶¶ 28-29, 31-34.[4] However, these allegations lack the required specificity, particularly, given that a prison fight presents the type of "hyperpressurized" situation which demands that Plaintiffs

---

[4] Of note, the Philadelphia Inquirer article that Defendants cite in their Motion to Dismiss provides more factual allegations than the Complaint:

> They've been piecing together information that's trickled out from the inside: that there was only one camera in the dorm, that there were two correctional officers on the whole cell block, that Frankie was not found until the prison conducted its lunchtime headcount.

Samantha Melamed, "A Month After Her Son Died in Philadelphia Jail, A Mother Is Still Fighting to Learn Why," Phila. Inquirer (Sept. 17, 2020), https://www.inquirer.com/news/philadelphia-jail-assault-frankie-diaz-jr-protest-death-detention-center-20200917.html.

allege specific facts that the Corrections Officers were deliberately indifferent in the "snap judgments" that were made at the time in question.

Moreover, Plaintiffs fail to allege sufficient facts that could reasonably lead to the discovery of circumstantial evidence to support their claim. E.g., Kedra v. Schroeter, 876 F.3d at 441. Specifically, Plaintiffs do not allege any facts that would indicate that the Corrections Officer Defendants were "expressly advised of the risk of harm and the procedures designed to prevent that harm and proceeded to violate those procedures." Id. Plaintiffs also fail to allege any facts that would give notice to the Corrections Officers about the dangerousness of Mr. Adam Tann, the alleged perpetrator of the assault, in particular.

Plaintiffs' conclusory allegations thus fail to demonstrate that the Corrections Officers had a realistic and reasonable opportunity to intervene but failed to do so. Plaintiffs simply claim that Defendants were not present when they should have been--but set forth no facts concerning prison-monitoring protocol, a history of violence in that particular cellblock, or a history of violent acts committed in prison by those other inmates. Although discovery would certainly reveal some of these crucial facts, "a plaintiff armed with nothing more than

conclusions" cannot have "the doors of discovery" opened. Iqbal, 556 U.S. at 678-79.

### 2. Section 1983 - Municipal Liability

To survive the pleading stage in a § 1983 claim against the City, Plaintiffs must allege that (1) a constitutionally protected right was violated and (2) the alleged violation resulted from a municipal policy or custom that exhibits deliberate indifference to rights of citizens. Monell v. Dep't Soc. Servs. of City of New York, 436 U.S. 658, 694-95 (1978). The City cannot be liable under § 1983 on a theory of respondeat superior. Id. at 691.

There are two general ways that a plaintiff can raise a § 1983 claim against a city: (1) that an unconstitutional policy or custom caused their injuries, or, (2) that the plaintiff's injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" Forrest v. Parry, 930 F.3d 93, 105 (3d Cir. 2019) (quoting Estate of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019)).

When bringing a custom or policy claim, a plaintiff must eventually "identify the challenged policy, attribute it to the city itself, and show a causal link between the execution of the policy and the injury suffered." Losch v. Borough of Parkesburg, Pennsylvania, 736 F.2d 903, 910 (3d Cir. 1984); Forrest, 930

11

F.3d at 105 ("[A] plaintiff presenting an unconstitutional
policy must point to an official proclamation, policy or edict
by a decisionmaker possessing final authority to establish
municipal policy on the relevant subject." (citing Monell, 436
U.S. at 798)).

Plaintiffs have not alleged sufficient facts that would
point to "an official proclamation, policy or edict by a
decisionmaker possessing final authority to establish municipal
policy" regarding the failure to hire sufficient prison guards.
Mere knowledge of difficulties hiring and retaining enough
employees is not the same as a policy to routinely hire fewer
Corrections Officers than are needed to maintain safe premises.
Plaintiffs allege that this is the result of "a deliberate or
conscious" policy, however, Plaintiffs only point to statements
by high-ranking municipal officials and events evincing
knowledge or constructive knowledge of understaffing. Plaintiffs
overlook that the City has no control over the personal
decisions of individual employees whether to show up for shifts,
not show up for shifts, or quit their jobs as prison guards. It
is settled that the City cannot be held liable on a theory of
respondeat superior under § 1983 for those individual decisions.
Bistrian, 696 F.3d at 366 (citing Iqbal, 556 U.S. at 676).

In addition, Plaintiffs have not alleged sufficient facts
to support a "custom" claim either. A custom of understaffing

would mean that the City's understaffing was a "course of conduct so well-settled and permanent as to virtually constitute law." Forrest, 930 F.3d at 105. But Plaintiffs have not alleged that the failure to hire was a course of conduct. Plaintiffs have alleged that the City has taken some measures that might make the occupation less desirable. See Compl. ¶ 55 ("On November 4, 2004, then-Commissioner Leon King implemented a limited overtime policy for PDP officers, sparking significant under-staffing."). But Plaintiffs have alleged no facts that indicate that there was a particular course of conduct in which, for instance, the hiring body for the Philadelphia Department of Prisons chose to hire fewer prison guards than were required. Even making all inferences in Plaintiffs' favor and taking all facts alleged as true, Plaintiffs have not pled sufficient facts to show that discovery could lead them to state a claim for municipal liability on a custom or practice theory.

V.    **CONCLUSION**

Based on the foregoing, Defendants' Motion to Dismiss will be granted. Plaintiffs' complaint does not currently allege sufficient facts to state a claim for relief under § 1983 against Individual Defendants or the City of Philadelphia; rather, the Complaint is rooted in legal conclusions and recitations of fact that do not meet the high bar of deliberate indifference. Plaintiffs' Complaint will be dismissed without

13

prejudice. Plaintiffs are given sixty days to amend. An

appropriate Order follows.